UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

   v.         CASE NO. 6:08-cr-282-Orl-19DAB

GARY ERNEST WILLIAMS

## **PLEA AGREEMENT**

  Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by A. Brian Albritton, United States Attorney for the Middle District of Florida, and the defendant, GARY ERNEST WILLIAMS, and the attorney for the defendant, Travis Williams, Esq., mutually agree as follows:

A. **Particularized Terms**

  1. Counts Pleading To

  The defendant shall enter a plea of guilty to Counts Thirty-Four through Thirty-Eight and Count Forty-Two of the Indictment.  Counts Thirty-Four through Thirty-Eight each charge the defendant with mail fraud, in violation of 18 U.S.C. § 1341.  Count Forty-Two charges the defendant with income tax evasion, in violation of 26 U.S.C. § 7201.

  2. Maximum Penalties

  Each of the mail fraud counts listed in Counts Thirty-Four through Thirty-Eight carry a maximum sentence of 20 years' imprisonment, a fine not more than

Defendant's Initials: _GEW_

AF Approval _[signature]_
Chief Approval _[signature]_

$250,000, not more than three years' supervised release, and a special assessment of $100 per felony count, said special assessment to be due on the date of sentencing.

The tax evasion count, listed in Count Forty-Two, carries a maximum sentence of five years' imprisonment, a fine not more than $250,000, not more than three years' supervised release, and a special assessment of $100, said special assessment to be due on the date of sentencing.

The fines for Counts Thirty-Four through Thirty-Eight and Count Forty-Two are also subject to Title 18, United States Code, Section 3571(d), which provides for a fine which is not more than the greater of twice the gain or twice the gross loss.

With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offenses, and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offenses, or to the community, as set forth below.

3.    Elements of the Offenses

The defendant acknowledges understanding the nature and elements of the offenses with which defendant has been charged and to which defendant is pleading guilty.  The elements of the mail fraud, Counts Thirty-Four through Thirty-Eight, are:

First:    That the Defendant knowingly devised or participated in a scheme to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations or promises;

Second:    That the false or fraudulent pretenses, representations or promises related to a material fact;

Third:    That the Defendant acted willfully with an intent to defraud; and

Fourth:     That the Defendant used a private or commercial
interstate carrier by depositing or causing to be deposited with such
carrier some matter or thing for the purpose of executing the
scheme to defraud.

The elements of the tax evasion count, Count Forty-Two, are:

First:     That the Defendant owed substantial income tax in addition to that
declared in his tax return; and,

Second:     That the Defendant knowingly and willfully attempted to evade or
defeat such tax.

4.     <u>No Further Charges</u>

If the Court accepts this plea agreement, the United States Attorney's

Office for the Middle District of Florida agrees not to charge defendant with committing

any other federal criminal offenses known to the United States Attorney's Office at the

time of the execution of this agreement, related to the conduct giving rise to this plea

agreement.

5.     <u>Counts Dismissed</u>

At the time of sentencing, the remaining counts against the defendant,

Counts One through Thirty-Three and Counts Thirty-Nine through Forty-One, will be

dismissed pursuant to Fed. R. Crim. P. 11(c)(1)(A).

6.     <u>Mandatory Restitution to the Victims of Offense of Conviction</u>

Pursuant to 18 U.S.C. §§ 3663A, defendant agrees to make full restitution

to Marian Farms in the amount of approximately $10.5 million, and to the Internal

Revenue Service in the amount of approximately $3,675,000.

7.    <u>Acceptance of Responsibility - Three Levels</u>

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a).  The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b), the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level.  The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

8.    <u>Taxes - Payment and Cooperation</u>

The defendant agrees to pay all taxes, interest, and penalties found to be lawfully owed and due to the Internal Revenue Service for the years 2004 through and including 2007, and to cooperate with and provide to the Internal Revenue Service any documentation necessary for a correct computation of all taxes due and owing for those years, and further agrees that the Court may make this term a condition of any sentence of probation or supervised release.

Defendant's Initials _____        4        Chief Approval _____

9.    <u>Forfeiture of Assets</u>

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), whether in the possession or control of the United States or in the possession or control of the defendant or defendant's nominees.  The assets to be forfeited specifically include, but are not limited to, the following:

(1)    Real property, including all improvements thereon and appurtenances, thereto located at: 136 Labelle Street, Pittsburgh, PA 1521, titled in the name of Brian T. O'Malley and Gerard S. O'Malley;

(2)    2007 Lexus IS350 VIN #JTHBE262072009423, registered to Brian T. O'Malley; and

(3)    $450,000 in cash given to Edward Cottrell, which includes $300,000 for the purchase of property known as Rafter Rest St. Margarets Bay Portland BWI Jamaica and $150,000 for repairs and updates to the property, which constitute proceeds traceable to Gary E. Williams' mail fraud violations described herein.

The Court's authority to order forfeiture of property for violations of 18 U.S.C. § 1341 is found upon 18. U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461.  Section 981(a)(1)(C) provides for the civil forfeiture of any property, real or personal, which constitutes or is derived from proceeds from any offense constituting "specified unlawful activity" as defined in 18 U.S.C. § 1956(c)(7), or a conspiracy to commit such offenses. 18 U.S.C. § 981(a)(1)(C).  A "specified unlawful activity," as defined in 18 U.S.C. § 1956(c)(7), includes offenses listed in 18 U.S.C. § 1961(1).  Specifically, 18 U.S.C. §

Defendant's Initials  _(illegible)_          5          Chief Approval  _(illegible)_

1961(1) includes as an offense any act which is indictable under 18 U.S.C. § 1341.

Criminal forfeiture of the proceeds of a specified unlawful activity is authorized by 28

U.S.C. § 2461(c), which provides that "[i]f a person is charged in a criminal case with a

violation of an Act of Congress for which the civil or criminal forfeiture of property is

authorized, the Government may include notice of the forfeiture in the indictment or

information pursuant to the Federal Rules of Criminal Procedure."  28 U.S.C. § 2461(c).

The defendant admits that he was engaged in the mail fraud violations discussed

herein, in violation of 18 U.S.C. § 1341, and that the real property, vehicle and cash

given to Edward Cottrell were purchased and/or funded with proceeds derived from

such violations.  As such, the defendant admits that those assets are subject to

forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).  The defendant

further admits that neither Brian T. O'Malley nor Gerard S. O'Malley were bona fide

purchasers of the real property and that he transferred the real property to them for no

consideration.  Moreover, the defendant admits that Brian T. O'Malley was not a bona

fide purchaser of the vehicle and that he transferred the vehicle to him for no

consideration.

The defendant agrees and consents to the forfeiture of these assets pursuant to

any federal criminal, civil, and/or administrative forfeiture action.  The defendant further

agrees not to contest the civil forfeiture of real property located at 1482 Howard Moore

Road, Hot Springs, NC 28743, which is currently owned by Judith P. Williams and Tara

N. Williams.  The defendant admits that neither Judith P. Williams nor Tara N. Williams

were bona fide purchasers for value and gave no consideration for the purchase of the

land at 1482 Howard Moore Road.  The defendant further agrees not to contest the civil

Defendant's Initials _____        6        Chief Approval _____

forfeiture of real property located at 136 Labelle Street, Pittsburgh, PA 15211, which is currently owned by Brian T. O'Malley and Gerard S. O'Malley.  The current owners of the Labelle Street property were not bona fide purchasers for value and gave no consideration for the property.  The defendant admits that both properties were purchased with proceeds derived from the mail fraud offenses discussed herein.

The defendant also hereby agrees that the forfeiture described herein is not excessive and, in any event, the defendant waives any constitutional claims that the defendant may have that the forfeiture constitutes an excessive fine.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government.  Pursuant to the provisions of Rule 32.2(b)(1), the United States and the defendant request that at the time of accepting this plea agreement, the court make a determination that the government has established the requisite nexus between the property subject to forfeiture and the offense(s) to which defendant is pleading guilty and enter a preliminary order of forfeiture.  Pursuant to Rule 32.2(b)(3), the defendant agrees that the preliminary order of forfeiture shall be final as to the defendant at the time it is entered, notwithstanding the requirement that it be made a part of the sentence and be included in the judgment.

The defendant agrees to forfeit all interests in the properties described above and to take whatever steps are necessary to pass clear title to the United States. These steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Defendant's Initials _____    7    Chief Approval _____

Defendant further agrees to take all steps necessary to locate property and to pass title to the United States before the defendant's sentencing. To that end, defendant agrees to fully assist the government in the recovery and return to the United States of any assets, or portions thereof, as described above wherever located. The defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control and those which are held or controlled by a nominee. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States.

The defendant agrees that the United States is not limited to forfeiture of the property described above. If the United States determines that property of the defendant identified for forfeiture cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty; then the United States shall, at its option, be entitled to forfeiture of any other property (substitute assets) of the defendant up to the value of any property described above. This Court shall retain jurisdiction to settle any disputes arising from application of this clause. The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this Court may impose upon the defendant in addition to forfeiture.

Defendant's Initials _____    8    Chief Approval _____

**B.**    **Standard Terms and Conditions**

    1.    Restitution, Special Assessment and Fine

        The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1) (limited to offenses committed on or after April 24, 1996); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663 (limited to offenses committed on or after November 1, 1987), including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement.  On each count to which a plea of guilty is entered, the Court shall impose a special assessment, to be payable to the Clerk's Office, United States District Court, and due on date of sentencing.  The defendant understands that this agreement imposes no limitation as to fine.

    2.    Supervised Release

        The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

    3.    Sentencing Information

        The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background,

Defendant's Initials _____    9    Chief Approval _____

character, and conduct of the defendant, to provide relevant factual information,

including the totality of the defendant's criminal activities, if any, not limited to the

count(s) to which defendant pleads, to respond to comments made by the defendant or

defendant's counsel, and to correct any misstatements or inaccuracies.  The United

States further reserves its right to make any recommendations it deems appropriate

regarding the disposition of this case, subject to any limitations set forth herein, if any.

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii),

the defendant agrees to complete and submit, upon execution of this plea agreement,

an affidavit reflecting the defendant's financial condition.  The defendant further agrees,

and by the execution of this plea agreement, authorizes the United States Attorney's

Office to provide to, and obtain from, the United States Probation Office or any victim

named in an order of restitution, or any other source, the financial affidavit, any of the

defendant's federal, state, and local tax returns, bank records and any other financial

information concerning the defendant, for the purpose of making any recommendations

to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered

by the Court.

4.     Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor

bound by this agreement.  The Court may accept or reject the agreement, or defer a

decision until it has had an opportunity to consider the presentence report prepared by

the United States Probation Office.  The defendant understands and acknowledges

that, although the parties are permitted to make recommendations and present

arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office.  Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement.  The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

5.    Defendant's Waiver of Right to Appeal and
        Right to Collaterally Challenge the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence or to challenge it collaterally on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. §

Defendant's Initials _____        11        Chief Approval _____

3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

6.    Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

7.    Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

8.    Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind.  The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any).  The defendant also understands that defendant has the right to plead not guilty

Defendant's Initials _____    12    Chief Approval _____

or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

9.    <u>Factual Basis</u>

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth below are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt:

Defendant's Initials _____    13    Chief Approval _____

FACTS

Defendant **GARY ERNEST WILLIAMS** (**WILLIAMS**) worked for Marian Gardens Tree Farm (Marian Gardens) in Groveland, Florida as the Chief Financial Officer. Marian Gardens is a Florida corporation that is in the business of growing and selling trees, as well as mining and selling potting soil and landscape mix.

**WILLIAMS** has been employed with Marian Gardens for the past 20 years. He started as the head bookkeeper, and as his responsibilities began to increase, he was promoted to Chief Financial Officer (CFO). Marian Gardens' owners relied upon **WILLIAMS** as CFO to provide internal and external bookkeepers and accountants with accurate and reliable financial information representing the Marian Gardens' income and expenses.

As CFO, **WILLIAMS** was the head of all departments, including accounting, human resources, and workman's compensation; he oversaw all employee concerns, hired accounting personnel, and in the last three years, had check-signing authority. Though he had no ownership interest in the company, **WILLIAMS** had earned his employers' respect and trust, and, as a result, exercised complete control over Marian Gardens' finances. For example, **WILLIAMS** received all bank statements at the post office box he had opened in the name of Marian Gardens; reconciled all bank accounts; coded checks for input into the company's accounts payable system; and acted as the sole contact with the outside accounting firm that prepared Marian Gardens' general ledgers, financial statements, and tax returns.

With that level of control, **WILLIAMS** was able to use several methods to embezzle funds from Marian Gardens and to cover up his fraud:

1.      **WILLIAMS** wrote checks from Marian Gardens' checkbook, forged the owner's signature, and paid his personal expenses.  **WILLIAMS** then intentionally failed to provide Marian Gardens' accounts payable department with the "fraudulent" cancelled checks.

2.      When providing financial information to accounts payable and outside accountants, **WILLIAMS** would not provide actual cancelled checks to accounts payable and outside accountants.  He would, however, provide check stubs with altered information.  For example, **WILLIAMS** would alter the check stubs of the fraudulent checks to reveal a legitimate business purpose and a dollar amount that would fit in with the legitimate business purpose.  On other occasions when **WILLIAMS** provided no checks, he told the accounts payable department that the checks had been voided and/or that the missing cancelled checks were the fault of the bank and not to worry about them.

3.      **WILLIAMS** made large cash withdrawals directly from the Marian Gardens' account, and made no accounting for it in the company's financial books and records.  In order to make those large withdrawals, **WILLIAMS** told bank officials that the cash was to pay bonuses to employees.

4.      In order to make such cash available for misappropriation, **WILLIAMS** drew upon the Marian Gardens' line of credit without anyone's knowledge by forging the

Defendant's Initials ___(GTW)___            15            Chief Approval ___RML___

owners signature.   He then deposited those funds into Marian Gardens' account, so that the fraud would go undetected.

     5.    **WILLIAMS** used Marian Gardens' checkbook as though it was his own personal account.  He wrote large checks to himself, deposited the funds into his personal bank account, and withdrew the money of cash.  Additionally, **WILLIAMS** purchased high-end luxury vehicles, such as Maseratis, BMWs and Porsches. **WILLIAMS** also used Marian Gardens' company checks to pay his personal automobile payments and credit card bills, including American Express, which funded a lavish lifestyle of expensive jewelry, high-end South Beach hotels, and vacations that included private jet transportation.  In 2007 alone, **WILLIAMS**' annual American Express bills, which had paid with Marian Gardens' money, exceeded $2.8 million.

     When **WILLIAMS** applied for the American Express card, he represented to American Express that the card was a business card by applying for the card in the name of Marian Gardens.  The owners of Marian Gardens, however, did not authorize use of an American Express card that only **WILLIAMS** would use for his personal spending.  In fact, the owners of Marian Gardens were not aware of the existence of the **WILLIAMS**/Marian Gardens American Express card.

     To cover the payments to American Express, **WILLIAMS** represented to the accounts payable at Marian Gardens that large personal bills, including American Express bills, were actually legitimate business expenses, by altering the check stubs' payee and amount to reveal a legitimate business expense and an amount much lower than the true check paid to American Express.  In one instance, **WILLIAMS** purported

that check number 17193 for $60,000 to American Express was a $529.96 check to Crystal Springs Water. This was **WILLIAMS**' modus operandi for all checks written to American Express and all other personal expenses paid through Marian Gardens. As a result, the owners of Marian Gardens relied upon the false financial statements that **WILLIAMS** caused to be created when filing their corporate income tax returns.

None of the owners, employees, or outside accountants were aware that at the time they received financial data from **WILLIAMS** that it was falsified. **WILLIAMS** admits that no one was aware he was paying his personal bills, including his American Express bills, with Marian Gardens' checks.

Because Marian Gardens relied upon the misrepresentations made by **WILLIAMS** and because of their trust in **WILLIAMS** as CFO, **WILLIAMS** was able to use Marian Gardens' profits and their FedEx account to mail his American Express payments from the Middle District of Florida by FedEx, a private or commercial interstate carrier. **WILLIAMS** was able to do so without detection from his employer or his employees.

In addition to illegally obtaining funds for his personal use, **WILLIAMS** affirmatively evaded his federal income taxes. During tax years 2004 to 2007, **WILLIAMS** used his fiduciary position as controller to convert approximately $10.5 million from his employer for his own use. Specifically, **WILLIAMS** filed income tax returns for tax years 2004 and 2005 reporting only W-2 wages from Marian Gardens. **WILLIAMS** knew this did not include all sources of income. **WILLIAMS** failed to include the income that he had embezzled from Marian Gardens, which, for the tax years 2004

Defendant's Initials _____    17    Chief Approval _____

and 2005, was approximately $1.48 million and $1.5 million, respectively.  The millions **WILLIAMS** failed to report afforded him a lifestyle he knew was not be possible with the reported earnings on his 2004 and 2005 income tax returns.  **WILLIAMS** knew those returns were false, and evaded true and accurate tax reporting.

For the 2006 tax year, **WILLIAMS** failed to file an income tax return.  He filed an extension for his 2006 tax return.  The extension reveals an estimated tax liability of $55,694, total payments of $55,694 and a $0 tax balance due.  This closely approximates **WILLIAMS**' withholding of $47,000.  While failing to file income tax returns, **WILLIAMS** received a salary from Marian Gardens exceeding $196,000 and embezzled approximately $2.1 million.  **WILLIAMS** concealed the existence of the embezzled funds by causing Marian Gardens to pay his personal expenses using the above-mentioned methods.

For the 2007 tax year, **WILLIAMS** also failed to file an income tax return.  While failing to file an income tax return, **WILLIAMS** received a salary from Marian Gardens exceeding $177,000 and embezzled approximately $5.4 million.  **WILLIAMS** concealed the existence of the embezzled funds by causing Marian Gardens to pay his personal expenses using the above-mentioned methods.

**WILLIAMS** further concealed his source of income by dealing in large sums of cash.  Between 2004 and 2007, **WILLIAMS**' cash withdrawals from Marian Gardens exceeded $600,000.  **WILLIAMS** also wrote checks to himself from the Marian Gardens account and deposited those checks into his personal account, where he again

withdrew large sums of cash. Between 2004 and 2007, those cash withdrawals exceeded $1.5 million.

In sum, **WILLIAMS** devised a scheme to defraud Marian Gardens and receive money by means of false pretenses. **WILLIAMS** furthered that scheme by causing items to be sent and received using the United States Mail and private and commercial carriers such as FedEx, including, but not limited to the following:

| COUNT | SHIP DATE | SENDER | RECIPIENT | DELIVERY DATE | ITEM SENT | DELIVERY METHOD |
|---|---|---|---|---|---|---|
| 34 | 1-2-08 | Gary Williams/ Marian Gardens - Groveland, FL | AMEX - Ft. Lauderdale, FL | 1-3-08 | Payment of $70,000 to AMEX with Marian Gardens check # 17567 | FedEx |
| 35 | 1-3-08 | Gary Williams/ Marian Gardens - Groveland, FL | AMEX - Ft. Lauderdale, FL | 1-4-08 | Payment of $50,000 to AMEX with Marian Gardens check # 17577 | FedEx |
| 36 | 1-7-08 | Gary Williams/ Marian Gardens - Groveland, FL | AMEX - Ft. Lauderdale, FL | 1-8-08 | Payment of $35,000 to AMEX with Marian Gardens check # 17579 | FedEx |
| 37 | 1-23-08 | Gary Williams/ Marian Gardens - Groveland, FL | AMEX - Ft. Lauderdale, FL | 1-24-08 | Payment of $10,000 to AMEX with Marian Gardens check # 17603 | FedEx |

Defendant's Initials _____    19    Chief Approval _____

| 38 | 1-30-08 | Gary Williams/ Marian Gardens - Groveland, FL | AMEX - Ft. Lauderdale, FL | 1-31-08 | Payment of $20,000 to AMEX with Marian Gardens check # 17604 | FedEx |

**WILLIAMS** agrees and acknowledges that the total amount of the loss attributable to him as a result of the scheme devised by him is approximately $10.5 million.

**WILLIAMS** further agrees that the owners of Marian Gardens suffered an actual loss as a result of his fraudulent conduct.

As for the tax loss, **WILLIAMS** agrees and acknowledges that the unreported income over the four-year period 2004-2007 is approximately $11.2 million. After making appropriate deductions and credits, the estimated tax loss to the United States Government is approximately $3,675,000. In addition, **WILLIAMS** agrees and acknowledges that he failed to report or correctly identify sources of income exceeding $10,000 in any year he knew was derived from criminal activity (as is required by application of U.S.S.G. Section 2T1.1 (b)(1)), specifically mail fraud.

10.    <u>Entire Agreement</u>

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

11.    <u>Certification</u>

      The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

      DATED this _____ day of July 2009.


                                    A. BRIAN ALBRITTON
                                    United States Attorney


_____    By: _____
GARY ERNEST WILLIAMS    Tanya D. Wilson
Defendant    Assistant United States Attorney


_____    _____
Travis Williams    I. Randall Gold
Attorney for Defendant    Assistant United States Attorney
                                    Deputy Chief, Orlando Division


Defendant's Initials _____    21    Chief Approval _____